**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WHITNEY BANK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 12-0076-KD-C** |
| | ) | |
| **DAVIS-JEFFRIES-HUNOLD, INC.,** | ) | |
| **MICHAEL SHANE JEFFRIES, and** | ) | |
| **D. ROBERT DAVIS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This action is before the Court on plaintiff Whitney Bank's motion for default judgment against defendant Davis-Jeffries-Hunold, Inc., (doc. 9) and motion for default judgment against defendant Michael Shane Jeffries (doc. 16).  Upon consideration and for the reasons set forth herein, the motions are **GRANTED** in part as follows:

      I.    <u>Background</u>

On February 9, 2012, Whitney Bank (Whitney) filed its complaint against Davis-Jeffries-Hunold, Inc. (DJH), Michael Shane Jeffries (Jeffries) and D. Robert Davis (Davis) (doc. 1). Previously, DJH executed a mortgage and commercial mortgage note in favor of Whitney (docs. 1-1, 1-2).  Jeffries and Davis executed continuing unlimited guaranties in favor of Whitney wherein they guaranteed DJH's debt (doc. 1-3).  DJH defaulted on the loan, Whitney accelerated the debt, and foreclosed upon the real property pursuant to the power of sale in the mortgage (doc. 1, doc. 9-2, doc. 16-2, Affidavit of Richard D. Buntin, Vice President, Whitney Bank).  The foreclosure sale to a third party resulted in a deficiency balance (*Id.*, doc. 1-4, foreclosure deed).

Whitney brings Count One of its complaint to recover the  deficiency balance due under

the terms of the loan documents and guaranties (doc. 1).   Whitney seeks judgment against the

defendants, jointly and severally, in the amount of $144,891.07, which consists of the principal

balance of $140,540.76 plus accrued interest in the amount of $4,350.31 (accruing at the per

diem rate of $64.93), prejudgment interest, accruing late charges and fees, and a reasonable

attorney's fee and costs  (doc. 1,  doc. 9-3, doc. 16-3, Affidavit of Counsel Annie J. Dike).

Davis was served with a copy of the summons and complaint by certified mail and he

filed an answer (doc. 3, doc. 4).  DJH and Jeffries were served with a copy of the summons and

complaint by certified mail (doc. 3, doc. 6, doc. 16-1).  DJH and Jeffries did not answer or

otherwise defend.  Upon Whitney's application, the Clerk entered default as to DJH and Jeffries

(doc. 8, doc. 15).  Whitney now moves for summary judgment as to Davis (doc. 10) and for

default judgment as to Jeffries and DJH (doc. 9, doc. 16).

II.    <u>Jurisdiction</u>

This Court has jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332 (doc. 1).

Whitney is a Louisiana banking organization. Davis is an Alabama citizen, DJH is a corporation

formed under the laws of Alabama and Jeffries is either a citizen of Alabama[1] or Missouri.[2]  The

amount in controversy is met because the deficiency balance due as alleged in the complaint,

$144,891.07, exceeds the jurisdictional amount of $75.000 (doc. 1, p. 9).

Because Whitney seeks a judgment by default against DJH and Jeffries, the Court must

---

[1]   The complaint was signed by counsel for Whitney and thus subject to Rule 11(b)(3) of
the Federal Rules of Civil Procedure which provides that "[b]y presenting to the court a pleading
. . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief,
formed after an inquiry reasonable under the circumstances. . . the factual contentions have
evidentiary support".  Therefore, the Court will accept these jurisdictional allegations as true.

[2]   The return of service as to Jeffries shows that he was served with the summons and
complaint in Holt, Missouri (doc. 16-1).

next determine whether it has personal jurisdiction over these defendants.[3] "The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted." *Baragona v. Kuwait Gulf Link Transport Co*, 594 F.3d 852, 854 -855 (11th Cir. 2010) (citing *Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries*, 353 F.3d 916, 925 n. 15 (11th Cir. 2003) ("Personal jurisdiction is a composite notion of two separate ideas: amenability to jurisdiction, or predicate, and notice to the defendant through valid service of process."); *see, e.g., Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments*, 553 F.3d 1351, 1360 (11th Cir. 2008) ("Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served.") (citation omitted); *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003) ("Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void.").  "It is axiomatic that absent good service, the Court has no in personam or personal jurisdiction over a defendant." *Nationwide Mut. Fire Ins. Co. v. Creation's Own Corp., S.C.*,  2011 WL 6752561, 2 (M.D. Fla. November 16, 2011) (citations omitted)

As to service of process, Rule 4(e) of the Federal Rules of Civil Procedure provides for

---

[3] The Court must address service of process and personal jurisdiction because a default judgment is invalid and ineffective unless the Court has personal jurisdiction over the defendants. *Rash v. Rash*, 173 F.3d 1376, 1381 (11th Cir.1999); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009) ("an *in personam* judgment entered without personal jurisdiction over a defendant is void as to that defendant") (citations omitted); *see also System  Pipe and Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("When entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." ).

serving an individual within the jurisdiction of the district courts of the United States but does

not provide for service by certified mail.  However, Rule 4(e)(1) allows for service "following

state law for serving a summons in an action brought in courts of general jurisdiction in the state

where the district court is located....". Fed. R. Civ. P. 4(e)(1).  In that regard, the Alabama Rules

of Civil Procedure provide for service by certified mail, return receipt requested, sent by counsel

and effective upon the date of delivery to the "named addressee or the addressee's agent as

evidenced by signature on the return receipt." Ala. R. Civ. P. Rule 4(i)(2)(B)(ii) and (C).

      The Court finds that it has personal jurisdiction over DJH.  *See Citibank, N.A. v. Data*

*Lease Financial Corp*., 904 F.2d 1498, 1502 (11th Cir. 1990) (finding the District Court for the

Southern District of Florida had personal jurisdiction over defendant Data Lease and its directors

because they were citizens of Florida).  Whitney filed a Notice of Service of Summons and

Complaint stating that DJH had been served on February 15, 2012 (doc. 9-1).  The Certified Mail

Return Receipt showed that D. Rob Davis had signed for DJH (doc. 3-1).  Whitney did not

provide any evidence as to whether Davis was the registered agent for service as to DJH or was

otherwise authorized to accept service.  However, the Government Records of the Alabama

Secretary of State indicate that he is the registered agent for service of process. *See*

http://www.sos.state.al.us.  The Records also indicate that DJH  was formed in Fairhope,

Baldwin County, Alabama and its principal address and registered office street address are there.

      As to Jeffries, Whitney filed a Notice of Service of Summons and Complaint and a

Certified Mail Return Receipt (doc. 6, doc. 6-1, doc. 16, doc. 16-1).  These documents show that

the Jeffries signed the Receipt for the summons and complaint which were mailed to Jeffries in

Holt, Missouri.  Service by certified mail on a non-resident defendant is allowed under Ala. R.

Civ. P. 4.2(b) (" Service outside of this state under this rule shall include service by certified

mail"); *Miles v. McClung,* 385 So.2d 1326, 1327 (Ala. Civ. App. 1980) (" At the onset, we note

that Rule 4.2(b), ARCP], allows service on nonresident defendants by certified mail.").

"A federal district court sitting in diversity may exercise personal jurisdiction to the

extent authorized by the law of the state in which it sits . . ." *Meier v. Sun International Hotels,*

*Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).  The district court may assert personal jurisdiction

over a nonresident defendant "only to the extent permitted by the long-arm statute of the forum

State, and only if the exercise of jurisdiction comports with the requirements of the Due Process

Clause of the Fourteenth Amendment." *Branch Banking and Trust Co. v. W.K. Brent Broaderip*,

2010 WL 3955794, 2 (S.D.Ala. Sept. 21, 2010) (*quoting Vermeulen v. Renault, U.S.A. Inc.*, 975

F.2d 746, 753 (11th Cir.1992), *opinion modified and superseded on other grounds by Vermeulen*

*v. Renault, U.S.A., Inc.*, 985 F.2d 1534 (11th Cir.), *cert. denied sub nom.Vermeulen*).

Alabama's long-arm statute, Ala. R. Civ. App. 4.2,  "authorizes Alabama courts to assert

jurisdiction to the fullest extent constitutionally permissible." *Mutual Serv. Ins. Co. v. Frit*

*Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004).  Therefore, the " 'two-part inquiry collapses

into one determination: whether exercising personal jurisdiction over a non-[resident] defendant

would offend due process.' "  *Branch Banking and Trust Co*,  2010 WL 3955794 at 2  (quoting

*Clark v. Deal*, 2009 WL 902533, at *2 (M.D. Ala. Mar. 31, 2009)) (bracketed text added);

*Vermeulen,* 975 F.2d at 753 ("When the courts of the forum State have interpreted the forum's

long-arm statute to confer jurisdiction to the limits allowed by federal due process, state law need

not be applied: we need only ask whether the exercise of jurisdiction over the nonresident

defendant comports with due process.")

"Due process requires both that the defendant have 'certain minimum contacts' with the

forum state, and if such minimum contacts exist, that the exercise of jurisdiction over the

defendant 'does not offend traditional notions of fair play and substantial justice.' " *Branch*

*Banking and Trust Co*, 2010 WL 3955794 at 3 (quoting *Burnham v. Superior Ct. of Cal*., 495

U.S. 604, 110 S.Ct. 2105 (1990) quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66

S.Ct. 154, 90 L.Ed. 95 (1945)). "In assessing a defendant's 'minimum' contacts with the forum

state, courts have distinguished between contacts establishing 'specific' and 'general'

jurisdiction." *Branch Banking and Trust Co.*, 2010 WL 3955794 at 3 (citation omitted).

General jurisdiction exists where the defendant's connection to the forum state is

"continuous and systematic." *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416,

104 S.Ct. 1868 (1984).  Specific jurisdiction exists where a party's activities in the forum are

> related to the cause of action alleged in the complaint. It has long been recognized
> that a court has the minimum contacts to support specific jurisdiction only where
> the defendant purposely avails itself of the privilege of conducting activities
> within the forum State, thus invoking the benefits and protections of its laws. The
> requirement that there be minimum contacts is grounded in fairness. It assures
> that the defendant's conduct and connection with the forum State [is] such that he
> should reasonably anticipate being haled into court there.

*Branch Banking and Trust Co.,* 2010 WL 3955794 at 3 quoting *Consol. Dev. Corp. v. Sherritt,*

*Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (internal citations and quotation marks omitted), *cert.*

*denied*, 534 U.S. 827, 122 S.Ct. 68 (2001). The Alabama Supreme Court has also explained that

"[d]epending on the quality and quantity of the contacts jurisdiction may be either general or

specific" *Ex parte Barton*, 976 So.2d 438, 443 (Ala. 2007). "General jurisdiction applies where a

defendant's activities in the forum state are substantial or continuous and systematic, regardless

of whether those activities gave rise to the lawsuit.... A court has specific jurisdiction when a

defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit."

*Id*. (internal quotations and citations omitted).

In order to determine "minimum contacts" with the forum state, the Court must weigh the

facts of each case. *Kulko v. Califonia Superior Ct.*, 436 U.S. 84, 92, 98 S.Ct. 1690 (1978)

("[T]he International Shoe 'minimum contacts' test is not susceptible to mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present.") (citations omitted).  The loan documents that form the basis of this litigation all include a choice of law provision selecting Alabama law as the controlling law and if recorded, were recorded in the Probate Court of Baldwin County, Alabama where the real property at issue is located.  The majority of the loan documents indicate an execution in either Baldwin County or Mobile County, Alabama.  Whitney, as Lender, shows an address in Mobile, Alabama.  Defendants as borrowers or mortgagors show an address in Fairhope, Alabama.

Jeffries and Davis incorporated DJH in Alabama in 2002 and it is still an existing corporation.  Alabama Secretary of State, Government Records, http://www.sos.state.al.us. Jeffries signed the Commercial Mortgage Note, two of the Changes in Terms of Agreement, and the Mortgage, Security Agreement and Financing Statement, as President of DJH  (docs. 1-1, 1-2).  The notary's attestation indicates that Jeffries signed in Baldwin County, Alabama (*Id.*) Davis' answer implies that Jeffries moved to Missouri  at some time after executing the loan documents  (doc. 4) ("To the best of my knowledge, Michael Jeffries has left the state of Alabama. His last known location was in Missouri").  These facts establish sufficient minimum contacts such that Jeffries should reasonably anticipate being brought into court in Alabama and the exertion of personal jurisdiction over Jeffries comports with due process.

III.    Choice of Law

 "[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits."  *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Alabama courts follow the traditional conflict-of-law principles of *lex loci contractus*

and _lex loci delicti. Lifestar Response of Ala., Inc. v. Admiral Ins. Co._, 17 So. 3d 200, 213 (Ala. 2009).  Thus, in Alabama, contract claims are governed by the laws of the state where the contract was made, unless the contracting parties chose a particular state's laws to govern their agreement. _Cherry, Bekaert & Holland v. Brown_, 582 So. 2d 502, 506 (Ala. 1991).  In this action, the parties chose the State of Alabama (doc. 1-1, pp. 3, 5, 7, 9, 12, doc. 1-3, pp. 3, 6, 8). therefore, the laws of the State of Alabama shall apply.

IV.   Notice

Also, this Court generally requires that some notice be given to defendants between the time of service of the summons and complaint and the entry of a default judgment. _See, e.g., JP Morgan Chase Bank, N.A. v. Surek,_  2011 WL 5289254, 2 (S.D.Ala. Nov. 4, 2011); _Pennsylvania Nat. Mut. Cas. Ins. Co. v. King,_  2012 WL 1712670, 2 n.4 (S.D.Ala. May 15, 2012) ("Certificates of Service confirm that Penn National mailed copies of both its Application for Entry of Default (doc. 23) and its Motion for Default Judgment (doc. 33) to Treasure Coast by and through its sole member and registered agent, Jewett. As such, there can be no doubt that Treasure Coast has received unequivocal, repeated notice of these ongoing default proceedings. In light of that fact, the Court finds that no further notice or invitation to Treasure Coast is warranted or required prior to entry of default judgment.)

The Court is satisfied that defendants DJH and Jeffries had notice of the default proceedings.  They were served with the summons and complaint.  The summons contains a warning: "If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court" (doc. 1). Additionally, Whitney served the defendants by U.S. Mail with a copy of the applications for entry of default and the motions for default judgment (Certificate of Service, docs. 7, 9, 12, 16).

IV.     Findings of Fact

On April 14, 2006, DJH executed a Commercial Mortgage Note in the amount of $497,250.00 in favor of Whitney (doc. 1-1).  The Note contains a provision wherein the "Obligor [DJH] agrees to pay the reasonable fees and costs of any attorney-at-law employed by Bank to recover sums owed or to protect Bank's interests with regard to this note.  Obligor further agrees to pay any and all charges, fees, costs, and/or taxes levied or assessed against Bank in connection with this Note or against any collateral provided of this Note." (doc. 1-1, p. 3).  The Note was renewed and modified on May 14, 2007 (doc. 1-1, p. 4-5), June 14, 2008 (doc. 1-1, p. 6-7), January 14, 2009 (doc. 1-1, p. 8-10), and September 1, 2009 (doc. 1-1, p. 11-13).  DJH remained indebted for the balance due on the Note and for attorney's fees and costs. (*Id*.)

Also on April 14, 2006, Jeffries executed a Continuing Guaranty to guaranty the debt of DJH.  The Guaranty  provides that the "Guarantor jointly, severally, and unconditionally guarantees to Bank the prompt payment of all obligations and liabilities of Borrower to Bank, . . . including . . . attorney's fees, expenses of collection and costs . . ." (doc. 1-3, p. 1).  Jeffries waived "all notice and pleas of presentment, demand, dishonor and protest." (doc. 1-3, p. 1).

The Note was secured by a Mortgage executed by DJH in favor of Whitney on April 14, 2006 (doc. 1-2).  The Mortgage granted Whitney a security interest in Lots 5, 6 23, 29, 30, 38, 44 and 57 located in Sedgefield Subdivision in Baldwin County, Alabama (doc. 1-2).  The Mortgage was modified effective September 1, 2009 (doc. 1-2, p. 13-14).  At that time, the principal balance was $306,850.00 and Lots 5, 23, and 44 had been sold.  The Mortgage Modification Agreement set a final maturity date of September 1, 2011 (*Id*.)  All other terms of the Mortgage remained in effect. (*Id*.)  DJH  defaulted under the terms of the Mortgage and the Modification and Whitney accelerated the debt due (doc. 1, doc. 16-2, Buntin Affidavit, ¶ 12).

9

Jeffries defaulted under the terms of the Continuing Guaranty  (*Id.*)

Pursuant to the power of sale in the Mortgage, which provided for non-judicial foreclosure of the real property, Whitney conducted a foreclosure sale on December 5, 2011.  A third party purchased the real property but the sale resulted in a deficiency balance due (doc. 16-2, Buntin Affidavit, ¶ 13-15, doc. 1-4, Foreclosure Deed).

At the time of filing the complaint, the deficiency balance was $144,891.07 which consisted of principal in the amount of $140,540.76 and interest in the amount of $4,350.31 (doc. 1).  Interest accrued at the per diem rate of $64.93 (doc. 1).  At the time of filing the motion for default judgment as to DJH, Whitney alleged that the deficiency balance was $147,033.76 which consists of a principal balance in the amount of $129,879.00, accrued interest of $15,354.76, and an appraisal fee of $1,800.00 (doc. 9).  At the time of filing the motion for default judgment as to Jeffries, Whitney alleged that the deficiency balance was $149,695.89 which consists of a principal balance in the amount of $129,879.00, accrued interest of $18,016.89, and an appraisal fee of $1,800.00 (doc. 16).

Whitney also seeks a reasonable attorney's fee and costs (doc. 1).  At the time of filing the motion for default judgment as to DJH, Whitney moved for $20,842.97 as attorney's fees and expenses (doc. 9, doc. 9-3, Dike's Affidavit ).  At the time of filing the motion for default judgment as to Jeffries, Whitney moved for $22,731.73 as attorney's fees and expenses (doc. 16, doc. 16-3, Dike's Affidavit).

V.     Analysis

The Federal Rules of Civil Procedure establish a two-part process for obtaining a default judgment.  Fed. R. Civ. P. 55.  If "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  After default has been

entered, if the "claim is for a sum certain or a sum that can be made certain by computation"  the

clerk must enter default judgment. Fed.R.Civ.P. 55(b)(1).  In all other circumstances, such as

here, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

Importantly, a "default judgment must not differ in kind from, or exceed in amount, what is

demanded in the pleadings." Fed. R. Civ. P. 54(c).

Rule 55(b)(2) also provides that the Court may conduct a hearing to enter a judgment if

the Court needs to "conduct an accounting", "determine the amount of damages", "establish the

truth of any allegation by evidence" or "investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

Upon review of the docket, the motion for default judgment, and supporting evidence, the Court

finds that a hearing is not necessary. *Securities and Exchange Commission v. Smyth*, 420 F.3d

1225, 1231–32 & n. 13 (11th Cir. 2005) (where "all essential evidence is already of record," a

hearing is generally not required).

The Court of Appeals for the Eleventh Circuit has held that although "a default is not

treated as an absolute confession by the defendant of his liability and of the plaintiff's right to

recover, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact.

The defendant, however, is not held to admit facts that are not well-pleaded or to admit

conclusions of law." *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. Appx. 860, 863 (11th Cir.

2007) (*per curiam*) (citations and internal quotations omitted).  Moreover, "before entering a

default judgment for damages, the district court must ensure that the well-pleaded allegations of

the complaint ... actually state a cause of action and that there is a substantive, sufficient basis in

the pleadings for the particular relief sought." Id. (emphasis omitted).  Therefore, Whitney must

establish a "prima facie liability case" against the defendants.  *Pitts ex rel. Pitts v. Seneca Sports,*

*Inc.*, 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004) (citations omitted).  Also, when assessing damages, the Court has "an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2007).

Overall,  "there is a strong policy of determining cases on their merits"  and therefore defaults are viewed "with disfavor." *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003).  "Since this case involves a default judgment there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment." *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada*, 674 F.2d 1365, 1369 (11th Cir. 1982)

Under Alabama law, loan documents are governed under contract law.  *See Penick v. Most Worshipful Prince Hall Grand Lodge F & A M of Alabama, Inc.,* 46 So.3d 416, 428 (Ala., 2010) (construing terms of a mortgage, notes and modification agreement).  In that regard, "[i]f the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by a summary judgment."  *Diamond v. Bank of Alabama*, 43 So.3d 552, 563 (Ala. 2009) (construing terms of a promissory note, guaranty, line of credit and letter of credit and finding documents underlying loan transaction were not ambiguous) (citations omitted).  *See Peppertree Apartments, Ltd. v. Peppertree Apartments*, 631 So.2d 873, 878  (Ala. 1993) ("The intention of the parties controls when a court construes the terms of a promissory note, and that intention is to be derived from the provisions of the contract, if the language is plain and unambiguous.").

In order to prevail on its breach of note claim against DJH,  Whitney must establish  the following elements of a breach-of-contract claim "(1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Financial Corp.*, 29 So.3d 872, 880 (Ala. 2009); *Vision Bank v.*

*Algernon Land Co., L.L.C.*, 2011 WL 1380062, 7 (S.D. Ala. Apr. 12, 2011); *Wachovia Bank,*

*NA v. L&H Investments, LLC*, 2010 WL 3825572, *4 (M.D. Ala., Sep. 24, 2010).

      In order to prevail on its breach of guaranty agreement claim, Whitney must establish the

existence of Jeffries's guaranty, default on the underlying Note by DJH, and nonpayment by

Jeffries as the guarantor. *Branch Banking and Trust Co. v. Broaderip*, 2011 WL 3511774, 3

(S.D.Ala. Aug. 11, 2011) ("Every suit on a guaranty agreement requires proof of the existence of

the guaranty contract, default on the underlying contract by the debtor, and nonpayment of the

amount due from the guarantor under the terms of the guaranty.") *quoting Delro Industries, Inc.*

*v. Evans*, 514 So.2d 976, 979 (Ala. 1987); *see also e.g., Vision Bank v. Algernon Land Co., LLC*,

2011 WL 1380062, *7–8 (S.D.Ala. Apr. 12, 2011); *Sharer v. Bend Millwork Sys., Inc.*, 600

So.2d 223, 225–226 (Ala. 1992).

      The guaranty at issue is a continuing guaranty.  Generally an additional element of notice

of  DJH's default to Jeffries as the guarantor must also be proven.  However, Jeffries waived "all

notice and pleas of presentment, demand, dishonor and protest." (doc. 1-3, p. 1).  *See, e.g.,*

*Sharer*, 600 So.2d at 226.  In that regard, "[t]he language of the guaranty is controlling in

determining whether the holder of the guaranty is under a duty to notify the guarantor of a

default by the principal, and notice need not be given when the terms of the guaranty expressly

dispense with the need for it." *Wells Fargo Bank v. Richard D. Horne*, LLC, 2010 WL 5376341,

*3 at n.1 (S.D.Ala. Dec. 27, 2010); *see also RBC Bank v. CMI Electronics, Inc.*, 2010 WL

2719096, *2 (M.D. Ala. Jul. 8, 2010) ("[i]n the case of a continuing guaranty, it is also necessary

to prove that the guarantor received notice of the debtor's default, unless that right has been

waived by the terms of the guaranty contract.").  Therefore, notice to Jeffries was not required.

      Moreover, when a contract is "one of absolute guaranty," as in this case, "the failure of

the principal to pay the debt within the time provided in the principal contract fixed the liability of the guarantors, without regard to the question of the principal's solvency or insolvency, and the plaintiff was under no duty to the guarantors to pursue its remedy against the principal as a prerequisite to its right to recover against the guarantors." *Ehl v. J.R. Watkins Medical Co.*, 112 So. 426, 426 (Ala. 1927); *In re Southern Cinemas, Inc.*, 256 B.R. 520, 527 (Bkrtcy. M.D.Fla. 2000) (holding under Alabama law that "[i]n order to be entitled to enforce the obligation of the contract of guaranty, the creditor must show that the guaranteed debt or obligation is due.").

DJH and Jeffries failed to  answer or otherwise defend this case. As to the merits of Whitney's motion for default judgment, the Court is satisfied that the allegations of the complaint state a cause of action for breach of the Commercial Mortgage Note and breach of the Continuing Guaranty.   Whitney alleges that it loaned funds to DJH, that the loan was in default because DJH failed to pay under the terms of the Note, that Jeffries failed to pay under the terms of the Guaranty, that a foreclosure sale was held pursuant to the terms of the Mortgage, and a deficiency balance remained due after the sale.   Review of the loan documents attached to the complaint shows that DJH was obligated to pay the Note and that Jeffries was obligated to pay in the event of DJH's default. Therefore, Whitney alleged a sufficient factual basis for relief.

As evidence of the debt due, Whitney submitted the Affidavit of Richard D. Buntin, a Vice-President of Whitney wherein he verified the facts as plead in the complaint and that all copies attached were true, correct and genuine (doc. 16-2, p 4).  Buntin verified that the parties entered into the respective Notes and Guaranty agreements, that DJH defaulted on payment of the Note, that a foreclosure sale was held, that a deficiency balance remains due on the Note after the foreclosures, and that DJH and Jeffries are jointly and severally liable for the deficiency as well as Whitney's reasonable attorney's fees and costs. (doc. 16-2).  Buntin's affidavit testimony

is sufficient evidence of the balance due on the Note. *See Wells Fargo Bank, N.A. v. Vergos*, 2012 WL 206169, *2 (S.D.Ala. Jan. 24, 2012) ("Alabama law provides that the proffer of a copy of the note and affidavit testimony as to the amounts due under the note, as well as the defendant's failure to make the required payments, is sufficient to establish a plaintiff's case to recover a note.") (citing *Griffin v. American Bank*, 628 So.2d 540, 543 (Ala. 1993) (affidavit submitted by bank president)).

VI.   Damages

On motion for default judgment, the " court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003).  Also, a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).  In the complaint, Whitney demands  judgment against the defendants, jointly and severally, in the total amount of $144,891.07, which consists of the principal balance of $140,540.76 plus accrued interest in the amount of $4,350.31 (doc. 1, p. 10).  Whitney also demands accrued prejudgment interest as provided by the loan documents (doc. 1, p. 10).  Therefore, Whitney is entitled to an award of interest accrued since the complaint was filed.[4]

As to accrued interest, in the motion for default judgment as to DJH, Whitney alleged that the deficiency balance was $147,033.76 which consists of a principal balance in the amount of $129,879.00, accrued interest of $15,354.76, and an appraisal fee of $1,800.00 (doc. 9).  In the

---

[4] The complaint indicates that interest accrues at the per diem rate of $64.93.  (*Id*.)  The most recent Change in Terms of Agreement showed a principal balance due of $306,850.00 and a change in terms to a fixed interest rate of .06% per annum calculated on a 360 day year (doc. 1-1, p. 11).  The Change in Terms also indicated that post-default interest would accrue at the rate of 18% per annum based on a 360 day year.  However, Whitney did not specify which interest rate was applied to calculate the per diem rate.

motion for default judgment as to Jeffries, Whitney alleged that the deficiency balance was $149,695.89 which consists of a principal balance in the amount of $129,879.00, accrued interest of $18,016.89, and an appraisal fee of $1,800.00 (doc. 16; doc. 16-2, Buntin Affidavit).

The principal balances in the motions for default judgment ($129,879.00) are not consistent with the principal balance in the complaint ($140,540.76). Also, the appraisal fee of $1,800.00 appears to be a cost of collecting the debt and more appropriately addressed with the request for the attorney's fees and costs. Therefore, the Court cannot ascertain the amount of interest accrued since the complaint was filed. Accordingly, **Whitney is ORDERED** to provide the Court with supporting evidence to resolve this conflict and establish the specific amount of damages to which it is entitled under the terms of the DJH loan documents and Jeffries' guaranty, including proof of the correct principal balance due on the deficiency after the foreclosure sale, accrued interest, and the per diem rate of interest, on or before **July 24, 2012**.

VII.    Attorneys' Fees and Costs

In the motion for default judgment against DJH, Whitney moves for $20,842.97 as attorneys' fees and costs (doc. 9, p. 2) and in the motion for default judgment against Jeffries, Whitney moves for $22,731,73 as attorneys' fees and costs (doc. 16, p. 2). In support of each request, Whitney provides the Court with substantially identical affidavits by its counsel Annie J. Dike (doc. 1-6, doc. 10-5, doc. 9-3, doc. 16-3). In each, Dike states that the "terms of the Loan Documents" provide that defendants "shall be responsible for reasonable attorney's fees in the event of the default" (*Id.*). Dike then states an amount due for attorney's fees and costs and gives her opinion that "this amount is reasonable . . ." (*Id.*)

As the movant, Whitney bears the burden of establishing the "reasonableness" of the attorney's fees requested. *American Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427

(11th Cir.1999).  In this court, a determination as to the reasonableness of attorney's fees begins with a determination of the reasonable hourly rate multiplied by the hours reasonably expended. *See Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir.1988) (applying a three-part framework for calculating the lodestar and explaining that before the calculation, the court should determine the reasonable hourly rate and hours reasonably expended).  In that regard, "[s]atisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Norman*, 836 F. 2d at 1299, citing *Blum*, 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n.11; *Wachovia Bank, Nat. Ass'n v. Motes Const. & Development, Inc.*, 2009 WL 4898355, 3 (S.D.Ala., 2009) (finding that an affidavit by an associate which did not contain supporting documentation of time spent on tasks or information regarding counsel's skill and experience levels was not sufficient to support a claim for attorney's fees and costs).

Therefore, Dike's affidavit testimony is not satisfactory evidence that the attorney's fees charged by her firm are reasonable. As an initial consideration, costs are not delineated separately from attorney's fees .  Also, Dike failed to provide any documentary evidence to show the hourly rate charged, the number of hours worked, and the type of work performed.  Nor did she provide information regarding the skill, knowledge, or experience of the attorneys performing the work.  In sum, Whitney failed to provide the Court with any documentation to support its request.  Thus, the Court lacks sufficient information to determine whether the attorneys' fees and costs requested are reasonable.  Accordingly, Whitney's motions for attorney's fees and costs are **DENIED** with leave to re-file on or before **July 24, 2012.**

    VIII.   <u>Conclusion</u>

Accordingly, it is **ORDERED** that Whitney's motions for default judgment as to Jeffries and DJH are **GRANTED** in part as set forth herein, and Whitney's requests for reasonable

attorney's fees and costs are **DENIED** with leave to re-file.

Final judgment shall issue upon resolution of the current pay-off balance and the reasonableness of the attorney's fees and costs. *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1355 (11th Cir. 2002) ("In this Circuit, a request for attorneys' fees pursuant to a contractual clause is considered a substantive issue...."); *Ierna v. Arthur Murray International, Inc.*, 833 F.2d 1472, 1476 (11th Cir. 1987) ("When the parties contractually provide for attorneys' fees, the award is an integral part of the merits of the case.").

**DONE** and **ORDERED** this 10th day of July, 2012.

/s/ Kristi K. DuBose
**KRISTI K. DUBOSE**
**UNITED STATES DISTRICT JUDGE**