IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WHITNEY BANK, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 12-0076-KD-C |
| ) | |
| DAVIS-JEFFRIES-HUNOLD, INC., ) | |
| MICHAEL SHANE JEFFRIES, and ) | |
| D. ROBERT DAVIS, ) | |
| ) | |
|    Defendants. ) | |

**ORDER**

This action is before the Court on Whitney Bank's Response to Court's Order on Damages and Attorney's Fees (doc. 26-1, Exhibit A). Upon consideration and for the reasons set forth herein, Whitney Bank is entitled to damages in the amount of $152,830.67 and its request for attorneys' fees, costs, and expenses is **GRANTED in part**, as set forth herein.

I. Background

Summary judgment was granted in favor of Whitney Bank and against defendant D. Robert Davis and default judgment was granted in favor of Whitney Bank and against defendants Michael Shane Jeffries and Davis-Jeffries-Hunold, Inc. (Docs. 22, 23) However, the Court declined entry of final judgment pending resolution of the then current amount of damages to which Whitney Bank was entitled including proof of the principal due on the deficiency after the foreclosure sale, accrued interest, and the per diem rate of interest. Also, the Court denied with leave to re-file Whitney Bank's request for attorneys' fees, expenses and costs because of a lack of sufficient information upon which the Court could reach a decision.

Whitney Bank now files under seal its response with additional evidence regarding

1

damages and its request for attorneys' fees, expenses and costs with supporting documentation. (Doc. 26, 26-1)  Whitney Bank mailed a copy to the defendants at their respective addresses of record. (Doc. 26, Certificate of Service; Exhibit A, Doc. 26-1)  Defendants did not file a response.[1]

   II. Jurisdiction and Choice of law

"A federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." *Colonial Life & Acc. Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004) (quoting *O'Neal v. Kennamer*, 958 F.2d 1044, 1046 (11th Cir.1992)): *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) ("a federal court sitting in diversity will apply the choice of law rules for the state in which it sits.").  As to choice of law, "Alabama follows the principle of 'lex loci contractus,' which states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction." *Cherry, Bekaert & Holland v. Brown*, 582 So.2d 502, 506 (Ala. 1991).  The choice of law provisions in the Change in Terms Agreement and the Guaranties provide for application of Alabama law. (Doc. 1-1, 1-2, 1-3)  Therefore, the law of Alabama applies in this action.

   III. Damages

Previously, the Court found that the "principal balance claimed in the motion for summary judgment ($129,879.00) [was] not consistent with the principal balance in the complaint ($140,540.76)." (Doc. 23, p. 13) Whitney Bank was ordered to provide evidence to resolve this conflict and establish the then current amount of damages to which it is entitled. (*Id*.)

---

[1] The Court also instructed defendant Davis, against whom summary judgment was entered, to file any reply to Whitney Banks's response, on or before August 17, 2012.  (Doc. 23)

Whitney Bank states that at the time of foreclosure on December 5, 2011, the deficiency balance on the loan was $129,879.00 with accrued interest in the amount of $8,861.76 ($64.93 per diem),[2] for a total principal and interest of $138,743.76, plus costs of $1,800 for the appraisal fee, for a total amount due at foreclosure of $140,540.76.  (Doc. 26-1) When the complaint was filed on February 9, 2012, Whitney Bank sought a total of $144,891.07 (Doc. 1).  This amount included $4,350.31 as the interest accrued from foreclosure through the day the complaint was filed (67 days x $64.93 = $4,350.31). (*Id.*)  Whitney Bank explains that the variance among the amount due at time of foreclosure, the amount requested in the complaint, the amount requested in the motion for summary judgment, and the amount requested in the motions for default judgment is solely because of the accrual of interest. (Doc. 26-1)

The calculations and accrual of interest having now been explained, the Court finds that damages are due to Whitney Bank in the amount of $129,879.00, the deficiency balance due at time of foreclosure, plus interest accrued at time of foreclosure $8,861.76, plus interest accrued from time of foreclosure on December 5, 2011 to July 10, 2012, in the amount of $14,089.91 (217 days x $64.93 per day), for a total of $152,830.67. [3]

IV. Attorneys fees

Whitney Bank seeks judgment for attorneys' fees in the amount of $22,438.00[4] incurred as a result of defendants' default in the terms of the loan and guaranties and the consequent

---

[2]  The post-default rate is 18%. (Doc. 1-1, p. 11, Change in Terms Agreement)

[3]  The order on summary judgment and order on default judgment entered July 10, 2012, explained that final judgment would "issue upon resolution of the current pay-off balance[.]" (Doc. 22, 23)

[4]  Whitney Bank did not provide the Court with a total amount of attorneys' fees.  This amount is calculated by deducting the expenses, $4,857.73, from the total requested, $27,295.73. (Doc. 26-1, p. 8)

collection.  Alabama "follows the American rule, whereby attorney fees may be recovered if they are provided for by statute or by contract" or "special equity".  *Jones v. Regions Bank*, 25 So.3d 427, 441 (Ala. 2009) (citations omitted); *Hartford Acc. & Indem. Co. v. Cochran Plastering Co., Inc.*, 935 So.2d 462, 472 (Ala. Civ. App. 2006) (citations omitted) (same); *see also In re Martinez,* 416 F.3d 1286, 1288 (11th Cir.2005) ("Generally, in federal litigation, ... a prevailing litigant may not collect an attorney's fee from his opponent unless authorized by either a federal statute or an enforceable contract between the parties.").  Also, a contract provision for attorneys' fees is "susceptible to breach." *Army Aviation Center Federal Credit Union v. Poston*, 460 So.2d 139, 141 (Ala.1984); *see Ierna v. Arthur Murray Int'l, Inc*., 833 F.2d 1472, 1476 (11th Cir.1987) ("When the parties contractually provide for attorneys' fees, the award is an integral part of the merits of the case.").

The most recent Change in Terms Agreement executed on September 1, 2009, by Davis-Jeffries-Hunold, Inc. (DJH) provides that if Whitney Bank hires attorneys to collect this debt, then DJH is responsible for Whitney Bank's attorneys' fees, legal expenses, and costs. (Doc. 1-1, p. 12)  The Continuing Guaranty signed by Michael Shane Jeffries on April 14, 2006 provides that the Guarantor will pay all costs of collection of DJH's liability to Whitney Bank, including attorneys' fees, expenses, and costs. (Doc. 1-3, p. 1)  However, the Continuing Guaranty does not appear to provide for payment of same for enforcement of Jeffries' Guaranty. (*Id*.)  The Commercial Guaranty executed by D. Robert Davis on June 14, 2008, provides that the Guarantor will pay all costs of collection of DJH's liability to Whitney Bank, including attorneys' fees, expenses, and costs and provides for payment of attorneys' fees, expenses, and costs for enforcement of his Guaranty. (Doc. 1-3, p. 7, 8)

Based on the terms of the Agreement and the Guaranties, the Court finds that Whitney

Bank is entitled to recover costs, expenses and attorneys' fees. *See Peppertree Apartments, Ltd. v. Peppertree Apartments*, 631 So.2d 873, 878 (Ala.1993) ("The intention of the parties controls when a court construes the terms of a promissory note, and that intention is to be derived from the provisions of the contract, if the language is plain and unambiguous.") Although the Agreement and Guaranties do not specifically state that the attorneys' fees must be reasonable, that requirement is imposed upon the fee-shifting provisions as a matter of public policy under Alabama law. *Willow Lake Residential Ass'n, Inc. v. Juliano*, 80 So.3d 226, 241 (Ala.Civ.App. 2010) ("Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation.").

In that regard, "[t]he determination of whether an attorney fee is reasonable is within the sound discretion of the trial court." *Kiker v. Probate Court of Mobile County,* 67 So.3d 865, 867 (Ala .2010) (citations omitted). Generally, the determination of reasonable attorneys' fees begins with a determination of the reasonable hourly rate multiplied by the hours reasonably expended." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008); *Norman v. Housing Authority of City of Montgomery*, 836 F. 2d 1292, 1303 (11th Cir. 1988). When making this determination, the Court may consider the twelve factors[5] identified in *Pharmacia Corp. v. McGowan*, 915 So.2d 549, 552–53 (Ala. 2004) (quoting *Van Schaack v. AmSouth Bank, N.A.*, 530 So. 2d 740, 749 (Ala. 1988)); *see also Bivins*, 548 F. 3d at 1350 (addressing the twelve

---

[5] "(1) [T]he nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances." *Pharmacia Corp.,* 915 So.2d at 552–53.

factors[6] from *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-719 (5th Cir.1974)). "The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins*, 548 F.3d at 1350 (internal citations and quotation omitted).

Once the lodestar is calculated, the utility of these factors may continue when considering whether the Court should adjust the lodestar. *Association of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9, 103 S.Ct. 1933, 1940 n. 9 (1983)) (noting that the district courts may consider the twelve factors outlined in *Johnson*, but that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.") Additionally, the Court may utilize its own "knowledge and expertise" to determine the reasonableness of requested attorney's fees. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). Overall, the movant bears the burden of establishing the "reasonableness" of the attorney's fees by providing specific evidence to support the hours and rates claimed. *American Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999); *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 Fed. Appx. 888, 895 (11th Cir. 2011).

    A.  <u>Reasonable hourly rate</u>

The reasonable hourly rate is generally "the prevailing market rate in the legal

---

[6] "Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Bivins*, 548 F. 3d at 1350 (quoting *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-719 (5th Cir.1974)).

community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-896 n. 11 (1984); *Norman*, 836 F. 2d at 1299. The "relevant market" is the "place where the case is filed." *Barnes*, 168 F.3d at 437 (citation and internal quotation marks omitted). Whitney Bank requests an award of $215.00 to $245.00 as a reasonable hourly rate for its partners. (Doc. 26-1, p. 5) In support, Whitney Bank provides the affidavit of Barry L. Thompson, an attorney who has practiced in this District for over thirty years in the areas of creditor rights and insolvency litigation. Thompson attests that the hourly rates requested for Jeffrey J. Hartley, a partner with more than fifteen years experience, are fair and reasonable. (Doc. 26-1, p. 62-63) Thompson's opinion is based on his knowledge of the hourly rates charged by attorneys practicing in the area of creditors' rights and insolvency litigation in this District, the nature of the work performed, and his familiarity with Hartley's "extensive experience in the field of creditors' rights and debt collection cases", "good reputation in the legal community", and "legal skills". (Id.) Whitney Bank also provides Hartley's opinion that the rates requested are reasonable. (Doc. 26-1, p. 58-61).

      The Court is familiar with the prevailing rates in this District. Therefore, the Court may act as its own expert and rely on its "knowledge and expertise" to determine the reasonableness and propriety of the requested fees. *Loranger,* 10 F.3d at 781. Recently, this Court addressed an attorneys' fee application by Whitney Bank. *Whitney Bank v. Plauche*, Civil Action No. 11-00689-KD-B, 2012 WL 5036867 (slip copy) (S.D. Ala. Oct.18, 2012). The Court found that a reasonable hourly rate for Jeffrey J. Hartley was $245.00 per hour. In this action, based upon consideration of the relevant factors, Thompson's opinion, and the Court's experience, knowledge and observations, as well a review of prior awards, the Court finds that the hourly

rates actually invoiced, $215.00 to $245.00[7] per hour, are reasonable hourly rates for Hartley. *See Duckworth v. Whisenant*, 97 F.3d 1393, 1396–97 (11th Cir.1996) ("Contrary to Defendant's supposition, this circuit has recognized that a movant may meet his burden by producing either direct evidence of rates charged under similar circumstances *or opinion evidence* of reasonable rates.") (italics in original); *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1337 (11th Cir. 2001) ("[T]he agreed-upon billing rate is a strong indication of a reasonable rate" and is "relevant evidence to determine the fee rate, but it is not necessarily determinative.").

The invoices show that partner "CT Conte" billed $245.00 per hour, partner "LG Weeks" billed $225.00 per hour, and two partners "JT Dukes" and "CR Mixon" billed $215.00 per hour. (Doc. 26-1)[8] Whitney Bank and Hartley provide a blanket statement that the other attorneys who worked on this action have extensive experience in mortgage restructuring, mortgage and real estate work, title work, foreclosures, creditor's rights and insolvency litigation. (Doc. 26-1, p. 8, p. 59)  However, Whitney Bank does not provide any information as to their respective years of practice, expertise, reputation in the community, skill, or other relevant factors.

In *Whitney Bank v. Plauche*, the Court was faced with an "indeterminate experience" situation for certain partners for whom an hourly rate of $245.00 was requested.  The Court awarded a rate of $225.00 per hour. 2012 WL 5036867, at *5 (citing *Wells Fargo Bank, N.A. v. Williamson*, 2011 WL 382799, *4 (S.D. Ala. Feb. 3, 2011)).  As to Conte, the Court finds no documentation or information that would merit a different hourly rate.  Therefore, his reasonable hourly rate is $225.00 per hour.  As to Weeks, the invoice shows that he spent 1.20 hours to draft

---

[7] Hartley's firm began work on this case in May 2009.  In 2009, he invoiced $220.00 per hour but his rate has increased.  (Doc. 26-1, p. 59)

a certificate of merger. (Doc. 26-1, p. 52)  This work does not appear related to collection of this debt.  Since there is no contractual or other basis for award, these fees are not allowed and the Court need not determine a reasonable hourly rate for Weeks.  As to Mixon and Dukes, relying upon the Court's own "knowledge and expertise" as to the reasonableness of an hourly rate in this District, *Loranger* 10 F.3d at 781, the Court finds that $215.00, the amount invoiced, is a reasonable hourly rate.

In regard to associate Annie J. Dike, the Court recently found that $150.00 was a reasonable hourly rate. *Whitney Bank v. Plauche*, 2012 WL 5036867, at *6.  In that action, Whitney Bank sought an hourly rate of $215.00.  The Court found that "Whitney Bank has only provided information as to [Dike's] years of experience (five (5)), but no information as to her background and/or expertise" and declined to award the requested rate.  *Id*.  In this action, Whitney Bank again seeks an hourly rate of $215.00. (Doc. 26-1, p. 8)

Although Whitney Bank does not include any information as to Dike's background, it points out that she has been practicing in Mobile, Alabama in the area of creditor's rights and debt collection for five years.  Whitney Bank provides Hartley's statement to the same effect and his opinion that the rate requested is reasonable. (Doc. 26-1, p. 58-61)  Importantly, Whitney Bank provides Thompson's opinion that the hourly rate requested for Dike is fair and reasonable which was not before the Court in *Whitney Bank v. Plauche.* (Doc. 26-1, p. 62-63).   Thompson's opinion is based on his knowledge of the hourly rates charged by attorneys practicing in the area of creditors' rights and insolvency litigation in this District, the nature of the work performed, and his familiarity with Dike's "extensive experience in the field of creditors' rights and debt collection cases", "good reputation in the legal community", and "legal skills". (Id.)

Upon consideration of the relevant factors, Thompson's opinion, and the Court's own

"knowledge and expertise" regarding local hourly rates, *Loranger,* 10 F.3d at 781, the Court finds that $170.00 is a reasonable hourly rate for Dike in this action.  *See Branch Banking and Trust Co. v. Imagine CBQ, LLC,* 2012 WL 1987830, *3 (S.D. Ala. June 4, 2012) (awarding $170.00 for an associate with five years experience); *see also Lifeline Pharmaceuticals, LLC v. Hemophilia Infusion Managers, LLC*, 2012 WL 2600181, *3 (S.D. Ala. July 5, 2012) (awarding $150.00 for a fourth year associate); *cf. Gulf Coast Asphalt Co., L.L.C. v. Chevron U.S.A., Inc.*, 2011 WL 612737, *3-4 (S.D. Ala., Feb. 11, 2011) (awarding $200.00 per hour for an attorney with approximately seven years experience); *Vision Bank v. Glynn,* 2012 WL 685281, *5 (S.D. Ala. Mar. 2, 2012) (awarding $220.00 for an attorney with more than twelve years experience).

As to the paralegals, Whitney Bank seeks $90.00 and $95.00 per hour as a reasonable hourly rate.  Whitney Bank argues that its counsels' staff has "extensive experience in mortgage and real estate work, title work, creditor's rights, and insolvency litigation." (Doc. 26-1, p. 8)  In support, Whitney Bank provides Hartley's statement that all staff who worked on this case have "extensive experience in their respective fields: mortgage restructuring title work, foreclosures and creditor's rights and insolvency litigation." (Doc. 26-1, p. 59)

Customarily, without evidence of "unusually advanced qualifications or expertise", this Court has awarded $75.00 as a reasonable hourly rate for paralegals. *Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC*, 2011 WL 1883009, *6 (S.D. Ala. May 17, 2011). Whitney Bank has not shown that the paralegals who worked on this case had "unusually advanced qualification or expertise" despite extensive experience in their respective fields. Therefore, the Court finds that $75.00 is a reasonable hourly rate for paralegal time.  *See Whitney Bank v. Plauche*, 2012 WL 5036867, at *6.

    B.  <u>Reasonable hours expended</u>

In determining whether the time expended is reasonable, the Court should not include any hours which are "excessive, redundant, or otherwise unnecessary" *i.e.*, hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Norman*, 836 F.2d at 1301 (emphasis omitted).  Also, when awarding an attorney's fee, the "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Barnes*, 168 F.3d at 428. Importantly, the Court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonableness and proper fees and may form an independent judgment with or without the aid of witnesses." *Norman*, 836 F.2d at 1303.

Whitney Bank seeks attorneys' fees for 62.60 hours spent by "Partners",[9] 35.10 hours spent by "Associate",[10] and 18.80 hours spent by "Paralegals". (Doc. 26-1, p. 6)  In support, Whitney Bank provides Thompson's opinion that the time spent for the work performed by Hartley and Dike was fair and reasonable which is based on his review of the time entries, familiarity with this type of work, and interviews with Hartley and Dike. (Doc. 26-1, p. 62-63) Whitney Bank also provides Hartley's opinion that the time spent was fair and reasonable. (Doc. 26-1, p. 58-61)

The Court has reviewed the docket and invoices, considered the opinions of Thompson and Hartley, and weighed all the relevant factors in deciding the reasonableness of the time expended.  The invoices indicate that partners Hartley and Dukes worked on the default,

---

[9]  The Court has disallowed fees for 1.20 hours expended by partner Weeks.  Thus, the amount is reduced to 61.40.

[10] Dike invoiced 30.70 hours not 35.10 hours.

restructuring, and closing of the restructured loan and Hartley, Mixon and Conte worked on the default and the foreclosures. In general, the time expended in collecting DJH's debt was not excessive, redundant, or otherwise unnecessary and was adequately supported by the descriptions in the invoices albeit redactions were applied in some descriptions and some of the entries constituted "block billing". [11] Accordingly, the time expended by Hartley (17.2 hours), Dukes (34.80 hours), Mixon (.50 hours), and Conte (8.90 hours) is reasonable. (Doc. 26-1, p. 13-55, invoices)

Associate Dike spent 19.20 hours working on the complaint, the motion for default judgment as to Jeffries, the motion for default judgment as to DJH, the motion for summary judgment as to Davis, and the response to this Court's order in regard to the principal balance due and interest. The hours expended are reasonable. However, these hours are subject to specific reductions to be applied in allocating the attorney's fees among the defendants. (*See* Section E)

Dike spent 11.50 hours working on the attorneys' fee request. (Doc. 26-1) Some of the hours were excessive, redundant, or clerical, and thus not compensable. Specifically, Dike spent .90 hour compiling and reviewing all invoices and charges in preparation for drafting the response, 2.20 hours for preparing the response "outlining all charges and the reasonableness of each", .60 hours for a "[d]etailed review of invoices" and preparation of a "break-down of hours

---

[11] Block billing consists of "blocks of time with a description of all actions performed, rather than itemizing the time billed by specific tasks". *Wolff v. Royal American Mgmt., Inc.*, 2012 WL 5303665, *6 (S.D. Ala. Oct. 25, 2012). This type of billing can make it difficult to determine the hours spent on a particular task. *Barnes,* 168 F. 3d at 429; *Mock v. Bell Helicopter Textron, Inc.*, 456 Fed. Appx. 799 (11th Cir. 2012) (applying a 20% reduction where there were duplication of efforts in addition to block billing); *Ceres Environmental Services*, 476 Fed. Appx. 198 (applying a 10% reduction for block billing).

spent and rates charged in preparation for drafting brief", and 2.90 hours for finishing the response, for a total of 6.6 hours. However, the response/request for attorneys' fees does not contain a detailed break-down or outline of the hours spent or rates charged.[12] (Doc. 26-1, p. 5-6) Therefore, the Court will apply an across-the-board cut of one-half. Thus, 3.30 hours are not compensable. *Bivins*, 548 F.3d at 1350 (if the "number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut.") (citing Loranger, 10 F.3d at 783). Also, Dike invoiced .80 hour to compile the exhibits in support of the response and .20 hour for a telephone call to the court in regard to extending a deadline. This is clerical work. Therefore, 1.0 hour is not allowed. Subtracting a total of 4.30 hours from the requested 11.50, yields 7.20 hours. The Court approves the 7.20 hours invoiced by Dike subject to specific reductions to be applied in allocating the attorney's fees among the defendants. (*See* Section E)

Paralegal time may be recovered for work traditionally performed by an attorney. "Otherwise, paralegal expenses are separately unrecoverable overhead expenses." *Allen v. U.S. Steel Corp.,* 665 F.2d 689, 697 (11th Cir. 1982). Thus, clerical work performed by a paralegal is not compensable. The descriptions in the invoice show that most of the time was spent receiving, reviewing, and indexing documents such as title reports or court orders; preparing cover letters with which to send documents such as foreclosure notices or letters requesting title commitments or surveys; sending or receiving emails with documents attached; preparing the civil cover sheet and summons; copying the complaint and exhibits for service by certified mail;

---

[12] The request contains a statement that the "Partners" billed between $215.00 and $245.00 for 62.6 hours, the "Associate" billed $215.00 per hour for 35.10 hours, and the "Paralegals" billed $90.00 to $95.00 per hour for 18.8 hours but not a break-down by partner, associate or paralegal showing the time expended by each or a general statement of the work performed.

receiving and indexing certified mail receipts; addressing service of process; e-filing documents with the Court and receiving and indexing those documents; and searching court records.

In *Allen v. McClain EZ Pack of Alabama, Inc.,* the Court explained that time spent "copying documents, updating pleading and correspondence binders, applying Bates numbers to documents, mailing and telefaxing correspondence" were "secretarial functions". 2005 WL 1926636, *3 (S.D. Ala. Aug. 8, 2005). Also, routine cover letters for mailing copies of documents are not the sort of correspondence that an attorney would traditionally draft. *See In re Carter*, 326 B.R. 892, 894 (Bankr. S.D.Fla. 2005) (finding non-compensable the paralegal time spent preparing correspondence and notices to the debtors and third parties); *Johnson v. TMI Management Systems, Inc.*, 2012 WL 4435304, *5-6 (S.D. Ala. Sept. 26, 2012) (applying an across-the-board cut for paralegal time described as "'Update correspondence section of file,' 'telephone call to client re: scheduling appointment,' 'Receipt and download of Order,' 'Review of Court's Scheduling Order and Ann's calendar regarding same,' 'calendaring of Order,'…").

Accordingly, the following paralegal time is compensable:

| Date | Description | Hours |
|---|---|---|
| July 2, 2009 | Drafted and revised demand letter to defendants | .30 |
| July 30, 2009 | Preparation of notice of foreclosure | .40 |
| Jan. 4, 2011 | Draft demand letter and email to client for approval | .40 |
| Feb. 21, 2011 | Prepare draft partial release of mortgage | .30 |
| Sept. 2, 2011 | Draft demand letter | .40 |
| Sept. 26, 2011 | Back and forth with Mr. Buntin at Whitney Bank | .10 |
| Oct. 6, 2011 | Prepare notice of foreclosure | .90 |
| Dec. 2, 2011 | Draft mortgage foreclosure deed and prepare for foreclosure | .60 |
| Dec. 5, 2011 | Revise and finalize mortgage foreclosure deed | .30 |
| | Total hours | 3.70 |

C. <u>Calculating the lodestar</u>

| | | |
|---|---|---|
| Hartley | 3.20 hours at $220.00 = | $ 704.00 |
| | 4.50 hours at $218.22 = | $ 981.99 |
| | .40 hours at $215.00 = | $ 86.00 |
| | 9.10 hours at $245.00 = | <u>$2,229.50</u> |
| | Sub-total Hartley | $4,001.49 |
| Dukes | 34.80 hours at $215.00 = | $7,482.00 |
| Mixon | .50 hours at $215.00 = | $ 107.50 |
| Conte | 8.90 hours at $225.00 = | $2,002.50 |
| Paralegals | 3.70 hours at $75.00 = | $ 277.50 |
| | Sub-total for work performed before the complaint was filed | $13,870.99 |
| Dike | 19.20 hours at $170.00 = (litigation) | $3,264.00 |
| | 7.20 hours at $170.00 = (attorney's fees) | <u>$1,224.00</u> |
| | Sub-total for work performed after the complaint was filed | <u>$4,488.00</u> |
| Total | | $18,358.99 |

D. <u>Adjustments to the lodestar</u>

Upon consideration of the relevant factors, the description of time expended, and the Court's own knowledge and experience, the Court finds that adjustments to the lodestar are not appropriate except as to the allocation of the attorneys' fee award among the defendants. (*See* Section E) Overall, the lodestar adequately takes into account the time and labor required; the novelty and difficulty of the litigation; the experience, skill, reputation, and expertise of the attorneys; the customary fee; and the results obtained.

E.  Attorneys' fees awarded

1. Jeffries

Jeffries' Continuing Guaranty renders him jointly and severally liable for the "obligations and liabilities of Borrower [DJH] to [Whitney] Bank", including "attorneys' fees, expenses of collection, and costs", but does not make him liable for payment of same for enforcement of his Guaranty, *i.e.*, the litigation against him. (Doc. 1-3, p. 1, ¶ 1)  *Cf. Synovus Bank v. Accu V*, 2012 WL 4434745 *2 (S.D. Ala. Sept. 25, 2012) (finding that Aspen's "guaranty further provides that Aspen 'will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this Guaranty in any litigation . . .'").  Also, the Guaranty does not make him liable for attorneys' fees, expenses, or costs for the enforcement of Davis' guaranty. *See Id.* at *2-3  (construing the contract in the light less favorable to the drafter and finding that Aspen's guaranty did not require payment of "fees incurred in connection with the plaintiff's efforts to collect from other guarantors.")

The Court has determined that $13,870.99 is a reasonable attorneys' fee for collection of DJH's debt <u>before</u> the complaint was filed.  Thus, Jeffries as a guarantor is liable for these attorneys' fees.  However, as to the time expended <u>after</u> the complaint was filed (which totals $4,488.00), it is difficult to ascertain what time was spent to enforce Jeffries' guaranty or Davis' guaranty or to collect DJH's debt.  For example, some time entries are redacted and others are not clear as to whether the work performed on the "default" is Jeffries' default or DJH's default.  Therefore, the Court allocates one-third of the attorneys' fees, $1,496.00, as incurred for enforcing Jeffries' guaranty and for requesting attorneys' fees for the enforcement.  However, Jeffries is not liable for those attorneys' fees.

16

Jeffries' guaranteed payment of the attorneys' fees for collecting DJH's debt. (Doc. 1-3, p. 1-3)  The Court now allocates one-third of the attorneys' fees, $1,496.00, as incurred for collecting DJH's debt after the complaint was filed and for requesting attorneys' fees for the collection. Jeffries is liable for that amount.  Therefore, Jeffries is jointly and severally liable with DJH and Davis for attorneys' fees for the collection of DJH's debt in the total amount of $15,366.99 ($13,870.99 + $1,496.00 = $15,366.99).

      2. Davis

Davis guaranteed payment of the attorneys' fees for collecting DJH's debt. (Doc. 1-3, p. 7-8)  Therefore, he is jointly and severally liable with DJH and Jeffries for attorneys' fees for the collection of DJH's debt in the total amount of $15,366.99.  However, Davis also guaranteed payment of attorneys' fees, expenses and costs for enforcing his guaranty. (Doc. 1-3, p. 7-8)  The Court now allocates one-third of the attorneys' fees, $1,496.00, as incurred for enforcing Davis' guaranty or requesting attorneys' fees for the enforcement.  Davis is liable individually for that amount.  Review of his Guaranty shows that he did not guaranty payment of the attorneys' fees for enforcement of Jeffries' guaranty.  *See Synovus Bank v. Accu V*, 2012 WL 4434745, *at* *2-3.

      3. DJH

In the Change in Terms Agreement, DJH agreed to pay Whitney Bank's attorneys' fees for collection of its debt. (Doc. 1-1, p. 12)  However, the Agreement does not obligate DJH to pay attorneys' fees for enforcement of the guaranty agreements. (*Id*.)  *See Synovus Bank v. Accu V*, 2012 WL 4660789, *2 (S.D. Ala. Oct. 4, 2012) (finding that the language of the note resulted in Accumarine's agreement "to pay reasonable attorney's fees arising from plaintiff's efforts to recover from Accumarine but not such fees associated with plaintiff's efforts to recover from the various guarantors.")  Thus, DJH is liable for attorneys' fees for collection of its debt in the

17

amount of $15,366.99  ($13,870.99 + $1,496.00 = $15,366.99)

F. Expenses

Whitney Bank seeks judgment for costs and expenses in the amount of $4,857.73 plus the appraisal fee of $1,800.00, for a total of $6,657.73, incurred as a result of the default.  (Doc. 26-1)  The Change in Terms Agreement provides that if Whitney Bank hires attorneys to help collect this debt, then defendant DJH would pay Whitney Bank's legal expenses. (Doc. 1-1, p. 12)  In the Guaranties, Jeffries and Davis guaranteed payment of Whitney Bank's expenses of costs of collection of DJH's debt. (Doc. 1-3, p. 1; p. 8)  The unambiguous language of the contracts indicates that the parties agreed to these terms. Therefore, Whitney Bank is entitled to recover the costs and expenses of collecting DJH's debt.  *See, e.g., Peppertree Apartments, Ltd. v. Peppertree Apartments*, 631 So.2d 873, 878 (Ala. 1993) (providing that "[t]he intention of the parties controls when a court construes the terms of a promissory note, and that intention is to be derived from the provisions of the contract, if the language is plain and unambiguous[]").

Most of the expenses were incurred for collection of DJH's debt such as expenses for title, travel to foreclose, surveys, and the appraisal.  As to those, the defendants are jointly and severally liable to Whitney Bank in the amount of $6,322.91.  Since Jeffries' guaranty did not obligate him to pay the costs and expenses of enforcement, $189.91 is not compensable. (*See* Section E) ($45.00 for a private process server, $116.66 for one-third of the filing fee and $28.25 for one-third of the copy costs after the complaint was filed) (Doc. 26-1, p. 48)  However, Davis' guaranty obligated him to pay the expenses of enforcement. Therefore, $144.91 is compensable as to Davis only. (*See* Section E) ($116.66 for one-third of the filing fee and $28.25 for one-third of copy costs after complaint was filed)

In sum, in addition to the balance due on the debt, DJH, Davis and Jeffries are liable

jointly and severally for

| | |
|---|---|
| Attorneys' fees | $15,366.99 |
| Costs and expenses | $ 6,322.91 |
| Total | $21,689.90 |

Davis is individually liable for

| | |
|---|---|
| Attorneys' fees | $1,496.00 |
| Cost and expenses | $ 144.91 |
| Total | $1,640.91 |

V. Conclusion

Upon consideration of the foregoing, final judgment is due to be entered against defendants DJH, Davis, and Jeffries, jointly and severally, in the amount of $152,830.67 plus attorneys' fees, costs and expenses in the amount of $21,689.90, for a total of $174,520.57, and against Davis individually in the amount of $1,640.91 for attorneys' fees, costs and expenses.

The issues of damages and attorneys' fees, costs and expenses having been resolved, final judgment consistent herewith shall be entered by separate document as required by Rule 58 of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this 9th day of November, 2012.

/s/ Kristi K. DuBose
**KRISTI K. DUBOSE**
**UNITED STATES DISTRICT JUDGE**